UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAN LAM, as successor-in-interest to Decedent SONNY LAM ("aka" Son Tung Lam ) and individually,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF LOS BANOS, a municipal corporation; JAIRO ACOSTA, individually and in his official capacity as a Police Officer for the CITY OF LOS BANOS; and DOES 2-50,<br><br>Defendants. | No. 2:15-cv-00531-MCE-KJN<br><br>**MEMORANDUM AND ORDER** |

Through this action Plaintiff Tan Lam ("Plaintiff"), as a successor-in-interest, seeks redress from the City of Los Banos ("City") and Officer Jairo Acosta ("Officer Acosta") (collectively "Defendants") for the shooting death of his son, Sonny Lam ("Decedent"). Presently before the Court is Defendants' opposed Motion for Summary Judgment ("Defendants' Motion"). Defs.' Mot., ECF No. 72, at 1–2; Pl.'s Opp., ECF No. 83; Defs.' Reply, ECF No. 88. For the reasons set forth below, Defendants' Motion is GRANTED in part and DENIED in part.[1]

---

[1] Because oral argument will not be of material assistance, the Court orders this matter submitted on the briefs. E.D. Cal. Local Rule 230(g).

**BACKGROUND**

Decedent suffered from schizophrenia for over ten years, but stopped taking medications for his ailment in the months preceding his death. First Amended Complaint ("FAC"), ECF No. 14, at 4:10–15; Lam Depo., ECF No. 85-1, at 103:5–10.[2] As a result, Decedent experienced a decline in his physical and mental health, which concerned his family members, including Plaintiff. FAC 4:13–15.

On September 2, 2013, Decedent and Plaintiff had an argument in their residence, and Decedent slapped and threatened to kill Plaintiff. FAC at 4:16–19; Defs.' Reply Statement of Undisputed Material Facts ("SUMF"), ECF No. 92, at 19:13–24. Due to Decedent's weakened physical state, Plaintiff was not physically harmed by these slaps, nor was he fearful of Decedent. Defs.' Reply SUMF 19:13–24. However, since Plaintiff was concerned about his son's declining mental health, he decided to contact police to seek medical attention for his son. Id. Plaintiff spoke limited English, so he enlisted the help of a nearby neighbor in contacting the police. Id. at 2:7–9.

At approximately 2:34 p.m., Plaintiff's neighbor called 9-1-1 and relayed Plaintiff's request for assistance. Defs.' SUMF, ECF No. 74, at 2:9–11. The dispatcher directed Plaintiff to wait at his residence for an officer to arrive, and Plaintiff complied. Pl.'s Resp. Defs.' SUMF, ECF No. 83-1, at 3:1–7; Lam Depo., ECF No. 77, at 43:1–10. The same dispatcher then radioed Officer Acosta and assigned him to investigate the assault. Defs.' Reply SUMF 3:17–19. Officer Acosta was provided a general description of the altercation, but was not told that Decedent suffered from mental illness. Id. at 3:3–12.

At 3:08 p.m., Officer Acosta arrived at Plaintiff's residence and made contact with Plaintiff outside his home. Pl.'s Resp. Defs.' SUMF 4:3–12; Defs.' Reply SUMF 4:7–9. Plaintiff claims that he informed Officer Acosta about Decedent's mental illness, but Defendants dispute whether Officer Acosta had been so advised before entering the

---

[2] Plaintiff's deposition is under two filings with the Court: Lam Deposition ECF No. 85-1, and ECF No. 77. For clarity, the Court includes ECF numbers in citations to Plaintiff's depositions throughout this Order.

residence. Lam Depo., ECF No. 85-1, at 45:20–25, 47:12–48:3; Defs.' Reply SUMF 3:21–4:6. Officer Acosta claims that he had difficulty understanding Plaintiff because of the language barrier, (Acosta Depo., ECF No. 85-3, at 63:17–20), but Plaintiff asserts that he spoke in English when he told Officer Acosta that his son suffered from mental illness. Defs.' Reply SUMF 3:21–4:6, 9–21. Officer Acosta further claims that he noticed blood on Plaintiff's lip before entering the home, which Plaintiff in turn denies. Acosta Depo. 62:17–63:8; Defs.' Reply SUMF 4:9–21. After speaking with Officer Acosta outside, Plaintiff led the way to Decedent's bedroom and opened the door. Lam Depo., ECF No. 85-1, at 48:4–20. The subsequent facts are also disputed.

When Plaintiff and Officer Acosta entered Decedent's room, Decedent was sitting in a chair wearing shorts, but no shirt. Defs.' Reply SUMF 4:21–28. Officer Acosta immediately took Decedent's hand and told him to come outside with him, to which Decedent responded "No, no, no," and "Go out. Go out," while "shooing" Officer Acosta out of his bedroom. Lam Depo., ECF No. 85-1, at 48:4–20, 51:24–9. Plaintiff alleges that Officer Acosta prodded Decedent to hit him, stating "Beat me. Beat me. Beat me," and "You hit me. You hit me. You hit me, go ahead." Id. at 48:4–20, 51:24–9, 49:15–25. Officer Acosta, on the other hand, denies challenging Decedent to hit him. Acosta Depo. 127:12–23.

Only a few minutes after arriving at the residence, at 3:13 p.m., Officer Acosta radioed for non-emergency police assistance to respond to the home. Pl.'s Resp. Defs.' SUMF 4:3–12. In addition, Officer Acosta alleges that while still in Decedent's room, he observed Decedent secure what appeared to be a blade from a desk.[3] Acosta Depo. 107:15–108. Plaintiff testified, however, that he never saw anything in his son's hands throughout the incident with Officer Acosta. Lam Depo., ECF No. 85-1, at 59:5–8; Defs.' Reply SUMF 11:11–28.

///

---

[3] This alleged object was later identified to be a pair of scissors. Defs.' Reply SUMF 9:25–28.

As Plaintiff began to leave the room, a "physical altercation" between Officer Acosta and Decedent occurred as "they were moving out to the door." Lam Depo., ECF No. 85-1, at 53:6–8. Once Plaintiff moved into the hallway, Officer Acosta told him to "get back." Defs.' Reply SUMF 4:21–28. Plaintiff moved a few steps down the hallway, and when out of visual range of Officer Acosta and Decedent, heard the first gunshot. Lam Depo., ECF No. 85-1, at 53:13–18.[4] Plaintiff moved forward to see his son and Officer Acosta, but was again told to "get back." Defs.' Reply SUMF 8:22–4:5. Plaintiff complied, and then heard a second gunshot. Id. at 8:22–4:5. Plaintiff returned to the hallway and saw Decedent covered in blood and laying on the ground. Lam Depo., ECF No. 85-1, at 53:20–54:3.

In the hallway, Plaintiff asked Officer Acosta why he shot his son; Officer Acosta responded "[h]e has a knife," and showed Plaintiff a "scratch" on the arm sleeve of his police uniform. Id. at 112:23–113:19. Officer Acosta also claims that Decedent attempted to take his gun during the altercation, which Plaintiff denies. Acosta Depo. 107:15–108:2.

Decedent received medical treatment at the scene from first responders, and was transported to the hospital. Defs.' Reply SUMF 18:9–19. He later succumbed to his wounds. Id.

## STANDARD

The Federal Rules of Civil Procedure provide for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v.

///

---

[4] Plaintiff provides that as he moved into the hallway, "Defendant Acosta and Sonny Lam [were] 'pushing and pulling' each other as they moved from Sonny's bedroom through the doorway into the hallway." Defs.' Reply SUMF 9:5–13, 7:4–10. Additionally, Plaintiff claims that "[he] stepped into the hallway immediately near Sonny Lam's bedroom door and almost instantly heard a gunshot." Pl.'s Opp. 3:2–4.

4

Catrett, 477 U.S. 317, 322 (1986).  One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  Celotex, 477 U.S. at 325.

Rule 56 also allows a court to grant summary judgment on part of a claim or defense, known as partial summary judgment.  See Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378–79 (C.D. Cal. 1995).  The standard that applies to a motion for partial summary judgment is the same as that which applies to a motion for summary judgment.  See Fed. R. Civ. P. 56(a); State of Cal. ex rel. Cal. Dep't of Toxic Substances Control v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998) (applying summary judgment standard to motion for summary adjudication).

In a summary judgment motion, the moving party always bears the initial responsibility of informing the court of the basis for the motion and identifying the portions in the record "which it believes demonstrate the absence of a genuine issue of material fact."  Celotex, 477 U.S. at 323.  If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

In attempting to establish the existence or non-existence of a genuine factual dispute, the party must support its assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits[,] or declarations . . . or other materials; or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251–52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and

Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987). The opposing party must also demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In other words, the judge needs to answer the preliminary question before the evidence is left to the jury of "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)) (emphasis in original). As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule [56(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. Therefore, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Id. 87.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

## ANALYSIS

Plaintiff seeks relief by way of nine state and federal causes of action, all of which are directed at Officer Acosta unless otherwise stated: (1) 42 U.S.C. Section 1983 ("§ 1983") wrongful death due to excessive force under the Fourth and Fourteenth Amendments; (2) § 1983 right to familial relationship under the Fourteenth Amendment; (3) § 1983 survival action for pain and suffering under the Fourth Amendment;

(4) § 1983 municipal liability against the City for unconstitutional customs or policies ("Monell Liability"); (5) wrongful death due to negligence, pursuant to California Civil Procedure Code §§ 377.60 and 377.61; (6) violation of California Civil Code § 52.1 ("Bane Act"); (7) Intentional Infliction of Emotional Distress ("IIED"); (8) Battery; and (9) Negligent Infliction of Emotional Distress ("NIED").  FAC 7–13.  Extensive factual questions preclude summary judgment on the majority of Plaintiff's claims.

### A. Federal Causes Of Action

#### 1. Fourth Amendment Excessive Force (First Cause of Action)

Defendants move for summary judgment on Plaintiff's first cause of action on the basis that the force used by Officer Acosta against Decedent was reasonable as a matter of law.  Defs.' Mem. Supp. Mot., ECF No. 73, at 7:1–10:6.  Under the Fourth Amendment, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ."  U.S. Const. Amend. IV.  Excessive force claims are analyzed under the Fourth Amendment's "objective reasonableness" standard.  See Graham v. Connor, 490 U.S. 386, 395 (1989); Drummond v. City of Anaheim, 343 F.3d 1052, 1056 (9th Cir. 2003).  The crucial inquiry in excessive force cases is whether the force was "objectively reasonable in light of the facts and circumstances confronting [the officers], without regard to their underlying intent or motivation."  Graham, 490 U.S. at 397; Blankenhorn v. City of Orange, 485 F.3d 463, 477 (9th Cir. 2007).

Calculating the reasonableness of the force used "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake."  Graham, 490 U.S. at 396; Blankenhorn, 485 F.3d at 477; Davis v. City of Las Vegas, 478 F.3d 1048, 1054 (9th Cir. 2007).  The court "first assess[es] the quantum of force used . . ." then "measure[s] the governmental interests at stake by evaluating a range of factors."  Davis, 478 F.3d at 1054.  These factors include, but are not limited to, "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others,

and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396; Blankenhorn, 485 F.3d at 477; Davis, 478 F.3d at 1054. The overall reasonableness calculus is not limited to these factors, however. "Rather, we examine the totality of the circumstances and consider 'whatever specific factors may be appropriate in a particular case, whether or not listed in Graham.'" Bryan v. MacPherson, 630 F.3d 805, 826 (9th Cir. 2010) (quoting Franklin v. Foxworth, 31 F.3d 873, 876 (9th Cir. 1974)). Reasonableness "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396; Drummond, 343 F.3d at 1058. Thus, "[a] reasonable use of deadly force encompasses a range of conduct, and the availability of less intrusive alternatives will not render conduct unreasonable." Wilkinson v. Torres, 610 F.3d 546, 551 (9th Cir. 2010). That said, as the Ninth Circuit has observed, "[t]he principle that summary judgment should be granted sparingly in excessive force cases 'applies with particular force where the only witness other than the officer was killed during the encounter.'" Collender v. City of Brea, 605 F. App'x 624, 627 (9th Cir. 2015) (citing Gonzalez v. City of Anaheim, 747 F.3d 789, 795 (9th Cir. 2014) (en banc)).

Fact issues preclude the entry of summary judgment on Plaintiff's first cause of action.[5] These factual issues include, but are not limited to: (1) whether Officer Acosta was aware that Decedent suffered from mental illness prior to entering Plaintiff's residence; (2) whether Decedent was armed with scissors at any point; (3) whether Decedent stabbed Officer Acosta with scissors; (4) whether Decedent attempted to take Officer Acosta's gun; and (5) after being shot the first time, whether Decedent continued to pose a threat to Officer Acosta. Defs.' Reply SUMF 3:22–4:6, 9:26–10:6, 17:8–21, 12:4–13:7, 15:9–16:8. Given the numerous critical unresolved factual issues, this Court is unable to evaluate the severity of the crime at issue, whether Officer Acosta or anyone else was in immediate danger, or whether Decedent resisted or attempted to escape

---

[5] Given this holding, Plaintiff's prayer for punitive damages also survives Defendants' Motion. Pl.'s Opp. 20:5–16; Defs.' Reply 10:12–17.

1 arrest. Nor can the Court balance the intrusion upon Decedent's Fourth Amendment
2 rights with the government's interests against this backdrop. Defendants' Motion is thus
3 DENIED as to Plaintiff's Fourth Amendment excessive force/wrongful death claim.[6]

### 2. Fourteenth Amendment Right to Familial Relationship (Second Cause of Action)

Defendants similarly move for summary judgment on Plaintiff's second cause of action, taking the position that Officer Acosta's use of force was reasonable at all times. Defs.' Mem. Supp. Mot., ECF No. 73, at 10:1–3. Since the analysis as to this cause of action differs slightly from the above foregoing analysis, however, the Court addresses it separately here. "[P]arents have a liberty interest in the companionship of their adult children and have a cause of action under the Fourteenth Amendment when the police kill an adult child without legal justification." Chaudhry v. City of Los Angeles, 751 F.3d 1096, 1106 (9th Cir. 2014); see also Curnow By and Through Curnow v. Ridgecrest Police, 952 F.2d 321, 325 (9th Cir. 1991). Such a cause of action is premised on a violation of substantive due process, see Moreland v. Las Vegas Metro. Police Dep't, 159 F.3d 365, 371 (9th Cir. 1998), because the Fourteenth Amendment "provides heightened protection against government interference with certain fundamental rights and liberty interests." Washington v. Glucksberg, 521 U.S. 702, 721 (1997). "The concept of 'substantive due process,' . . . forbids the government from depriving a person of life, liberty, or property in such a way that 'shocks the conscience' or 'interferes with rights implicit in the concept of ordered liberty.'" Nunez v. City of Los Angeles, 147 F.3d 867, 871 (9th Cir. 1998) (quoting United States v. Salerno, 481 U.S. 739, 746 (1987)). "The substantive component of the Due Process Clause is violated by

---

[6] The Court is cognizant that the parties dispute whether Plaintiff's first cause of action was also based on a theory that Officer Acosta was deliberately indifferent to Decedent's medical needs. The FAC does not include such a claim. Accordingly, to the extent Defendants seek summary judgment on such a claim, their motion is DENIED. The same is true as to Plaintiff's attempts to raise for the first time in his Opposition both unlawful detention/arrest theories and a state claim for wrongful death against the City. Because these causes of action are also wholly absent from the FAC, there is no basis on which to grant judgment, and Defendants' Motion is DENIED in this regard as well.

9

executive action only when it 'can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.'" Arres v. City of Fresno, No. CV F 10-1628 LJO SMS, 2011 WL 284971, at *14 (E.D. Cal. Jan. 26, 2011) (quoting Collins v. City of Harker Heights, 503 U.S. 115, 128 (1992)).

"In determining whether excessive force shocks the conscience, the court must first ask whether the circumstances are such that actual deliberation [by the officer] is practical." Hayes v. County of San Diego, 736 F.3d 1223, 1230 (9th Cir. 2013). If actual deliberation by an officer is practical, that officer's "deliberate indifference" may suffice to "shock the conscience." Id. Yet, where deliberation is impractical and the officer is forced to make a "snap judgment" due to a rapidly evolving situation, only conduct "with a purpose to harm unrelated to legitimate law enforcement objectives" may suffice to "shock the conscience." Id.; see also Tatum, 768 F.3d at 821.

When confronted with the question of whether "deliberate indifference" or "purpose to harm" must be shown in the context of fast-paced situations similar to the one underlying the present claims, courts have generally found, as a matter of law, that the involved officers had no time to deliberate and that the complaining party must therefore prove that a defendant acted with a "purpose to harm." See Wilkinson v. Torres, 610 F.3d 546, 554 (9th Cir. 2010) ("[A]pplication of the purpose-to-harm standard is clearly appropriate" when "[w]ithin a matter of seconds, the situation evolved from a car chase to a situation involving an accelerating vehicle in dangerously close proximity to officers on foot."); Porter v. Osborn, 546 F.3d 1131, 1139 (9th Cir. 2008) (The "purpose to harm standard" applied to a five-minute long altercation between a suspect and officers when officers "faced an evolving set of circumstances that took place over a short period of time necessitating 'fast action'. . . .").

As in those cases, the undisputed evidence before the Court here indicates that there was no time for Officer Acosta to "deliberate" his actions as that term is used within the relevant authorities. To the contrary, upon Officer Acosta's arrival at the Lam residence at 3:08 p.m., the situation evolved rapidly. Pl.'s Resp. Defs.' SUMF 4:3–12.

10

Immediately upon entering the room, an argument ensued between Officer Acosta and Decedent. Lam Depo., ECF No. 85-1, at 48:4–20, 51:24–9, 49:15–25. At 3:13 p.m., Officer Acosta made a radio transmission requesting another officer to meet him at the residence, and had a physical altercation with Decedent. Pl.'s Resp. Defs.' SUMF 4:3–12; Lam Depo., ECF No. 85-1, at 53:6–8. Plaintiff's testimony supports the finding that little time elapsed between the initial argument, the physical altercation, and the first gunshot. Lam Depo., ECF No. 85-1, at 53:13–18. Indeed, Plaintiff's own contentions support the conclusion that Officer Acosta was forced to make a series of snap judgments.

Accordingly, the Court finds that the question whether Officer Acosta's conduct "shocks the conscience" must turn on whether he acted with the requisite "purpose to harm" Decedent as opposed to merely with "deliberate indifference." Because this latter inquiry turns, however, on resolution of the same disputed facts identified with regard to Plaintiff's first cause of action, summary judgment is inappropriate. As such, Defendants' Motion for Summary Judgment for Plaintiff's second cause of action is DENIED. Given the Court's findings above, however, Plaintiff will be required to prove at trial that Officer Acosta acted with "purpose to harm" Decedent as opposed to just with "deliberate indifference."[7]

### 3. Survival Action Based on the Denial of Decedent's Fourth Amendment Rights (Third Cause of Action)

Defendants contend that Plaintiff's third cause of action, which seeks to recover for Decedent's pain and suffering, is duplicative of the first cause of action because pain and suffering can be incorporated into the assessment of damages under the Fourth Amendment excessive force claim. This Court agrees. See Estate of Lopez v. Gelhaus,

---

[7] To the extent Plaintiff also attempted to allege claims arising from familial relationships pursuant to the first cause of action under the Fourth Amendment, those claims are duplicative of those set forth in the instant cause of action. See M.M. v. Lafayette Sch. Dist., 681 F.3d 1082, 1091 (9th Cir. 2012) ("A district court has discretion to dismiss duplicative causes of action within a complaint."). Therefore, Defendants' Motion for Summary Judgment as to any right to familial relationship claims included within the first cause of action is GRANTED.

1 149 F. Supp. 3d 1154, 1167 (N.D. Cal. 2016) (Finding that since a Fourth Amendment wrongful death cause of action provides a mechanism to seek damages for pre-death pain and suffering, an independent cause of action for pain and suffering is duplicative.). Accordingly, Defendants' Motion for Summary Judgment on Plaintiff's third cause of action is GRANTED.

### 4. Qualified Immunity

Defendants also argue that, even if summary judgment is precluded on the merits of the above claims, Officer Acosta is entitled to qualified immunity. "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" Saucier v. Katz, 533 U.S. 194, 200 (2001) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). A qualified immunity analysis has two prongs: (1) whether "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right," and (2) "whether the right was clearly established." Saucier, 533 U.S. at 201–02. A court may address these two prongs in either order. Pearson v. Callahan, 555 U.S. 223, 236 (2009). Accordingly, courts may "bypass[] the constitutional question in the qualified immunity analysis," i.e., the first prong, and address only the second prong when "it will 'satisfactorily resolve' the . . . issue without having 'unnecessarily to decide difficult constitutional questions.'" Ramirez v. City of Buena Park, 560 F.3d 1012, 1023 (9th Cir. 2009) (quoting Brosseau v. Haugen, 543 U.S. 194, 201–02 (2004) (Breyer, J., concurring)).

The "concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made," and that it is "often difficult for an officer to determine how the relevant legal doctrine will apply to the factual situation that he faces." Estate of Ford v. Ramirez-Palmer, 301 F.3d 1043, 1049 (9th Cir. 2002). If an officer had a reasonable, albeit mistaken, belief that his use of force was not contrary to clearly established law, the officer is entitled to qualified immunity. Saucier, 533 U.S. at 205–06.

As above, the same disputed material facts prevent the Court from determining whether Officer Acosta is entitled to qualified immunity. See Sinaloa Lake Owners

Ass'n v. City of Simi Valley, 70 F.3d 1095, 1099 (9th Cir. 1995) ("If there are genuine issues of material fact in issue relating to the historical facts of what the official knew or what he did, it is clear that these are questions of fact for the jury to determine."). Indeed, if all factual disputes are resolved in Plaintiff's favor, the jury would find that Officer Acosta knew that Decedent was mentally ill upon entering the residence, yet shot him twice without provocation and planted a weapon to make it appear that he had instead been attacked. Such conduct would clearly be contrary to established law. Therefore, the Court DENIES Defendants' request for qualified immunity.

### 5. Municipal Liability

Finally as to Plaintiffs' federal claims, Defendants contend that the City cannot be held liable because Plaintiff offers no evidence to support such a claim. Defs.' Mem. Supp. Mot., ECF No. 73, at 11:17–12:14. A municipality may only be liable where it individually causes a constitutional violation via "execution of a government's policy or custom, whether by its lawmakers or by those whose edicts or acts may fairly be said to represent them." Monell v. Dep't of Social Services, 436 U.S. 658, 694 (1978); Ulrich v. City & County of San Francisco, 308 F.3d 968, 984 (9th Cir. 2002). Municipal liability under Monell can arise three ways:

> (1) [W]hen official policies or established customs inflict a constitutional injury; (2) when omissions or failures to act amount to a local government policy of deliberate indifference to constitutional rights; or (3) when a local government official with final policy-making authority ratifies a subordinate's unconstitutional conduct.

Rodelo v. City of Tulare, No. 1:15-cv-1675-KJM-BAM, 2016 WL 561520, at *3 (E.D. Cal. Feb. 12, 2016). Plaintiff has tacitly conceded the lack of viability of its claims based on the first two theories and opposes Defendants' Motion only as to the ratification theory.

Plaintiff's concession in that regard was well taken. Defendants have provided undisputed evidence both that the police department had official policies on officer encounters with mentally ill citizens and in requiring officers to train on interactions with

///

13

mentally ill suspects.  See Decl. Cmdr. Jason Hedden, Ex. A (11), ECF No. 78, at 40, 42. Summary judgment as to the first two bases of liability alleged is thus appropriate.

Plaintiff's only remaining argument is that Officer Acosta failed to follow "tactical guidelines required of law enforcement officers."  According to Plaintiff, because the City failed to discipline Officer Acosta, it therefore ratified his actions.  Pl.'s Opp. 15:26–28, 16:7–9.  Even assuming Plaintiff is correct, however, this is insufficient to establish liability under Monell.  First, "a single incident by non-policymaking police officers . . . is insufficient to show a policy or custom."  Sanders v. City of Fresno, 551 F. Supp. 2d 1149, 1179 (E.D. Cal. 2008).  Second, a city's failure to discipline a particular officer is insufficient by itself to show ratification of that officer's conduct.  See Haugen v. Brosseau, 351 F.3d 372, 393 (9th Cir. 2003) ("[N]o facts in the record [ ] suggest that the single failure to discipline [an offending officer] rises to the level of such a ratification" under Monell.).  Since Plaintiff has not provided sufficient evidence to establish Monell liability under a ratification theory, the Court GRANTS summary judgment in favor of Defendants with regard to Plaintiff's fourth cause of action.

### B. State Law Claims

Plaintiff's remaining causes of action arise under California state law.  The Court addresses each in turn.

#### 1. Negligent Wrongful Death

Plaintiff's fifth cause of action, a negligence claim for wrongful death, is advanced under California Civil Procedure Code § 377.60, "which is simply the statutorily created right of an heir to recover for damages resulting from a tortious act which results in the decedent's death."  Gilmore v. Superior Court, 230 Cal. App. 3d 416, 420 (1991) (citations omitted).  The elements of a negligence cause of action under California law are: (1) a legal duty to use due care; (2) a breach of that duty; (3) causation; and (4) damages.  See Ladd v. County of San Mateo, 12 Cal. 4th 913, 917 (1996).  "Under California law, police officers have a duty not to use excessive force."  Garlick, 167 F. Supp. 3d at 1177 (citations omitted).  Furthermore, California's Supreme Court

has provided that "an officer's lack of due care can give rise to negligence liability for the intentional shooting death of a suspect," Munoz v. Olin, 24 Cal. 3d 629, 634 (1979), if a plaintiff can show that an officer violated the duty "to use reasonable force under the totality of the circumstances." Brown v. Ransweiler, 171 Cal. App. 4th 516, 526 n.10 (2009). California's negligence law "is broader than federal Fourth Amendment law," because the officer's "tactical conduct and decisions preceding the use of deadly force are relevant considerations under California law in determining whether the use of deadly force gives rise to negligence liability." Hayes v. Cty. of San Diego, 57 Cal. 4th 622, 639 (2013).

Defendants move for judgment as to this claim on the grounds that Plaintiff's fifth cause of action is duplicative of the first. Defs.' Mot., ECF No. 72, at 1:2–4. Defendants are incorrect, because negligent wrongful death under California state law has a different legal standard than the Fourth Amendment wrongful death claim. That said, the same analysis that prevents the Court from granting summary judgment on Plaintiff's first cause of action likewise applies here, and Defendants' Motion for Summary Judgment on Plaintiff's fifth cause of action is DENIED.

### 2. Bane Act

Plaintiff's sixth cause of action is under the Bane Act, which prohibits "threat[s], intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state . . . ." See Cal. Civ. Code § 52.1(a). Defendants seek judgment in reliance on Rodriguez v. City of Fresno, 819 F. Supp. 2d 937, 953–54 (E.D. Cal. 2011), arguing that Plaintiff failed to show coercion separate from Officer Acosta's use of deadly force itself. Defs.' Mem. Supp. Mot., ECF No. 73, at 16:24–17:2. However, the facts of Rodriguez are readily distinguishable from those of the present matter. The plaintiff in Rodriguez was accidentally shot by police officers during their pursuit of another suspect; she was not the intended subject of the officer's use of force. Rodriguez,

1 819 F. Supp. 2d at 943.  Additionally, this District's post-Rodriguez decisions call into
2 question Rodriguez' application to Bane Act claims arising from Fourth Amendment
3 excessive force.  See Youngblood v. City of Bakersfield, No. 1:12-CV-1150 AWI JLT,
4 2014 WL 1386392, at *13 (E.D. Cal. Apr. 9, 2014), at *36 (E.D. Cal. Apr. 2, 2014)
5 ("[P]rior to 2012, this court . . . held in order to state a claim under the Bane Act, 'the
6 coercive force applied against a plaintiff must result in an interference with a separate
7 constitutional or statutory right.' [Citing Rodriguez].  More recently, this court has noted
8 that the legal landscape has evolved since Rodriguez . . . .").  Indeed, recent case law
9 supports the conclusion that where plaintiffs bring a Bane Act claim alleging that officers
10 used excessive force, they do not need to allege any coercion that is independent from
11 the excessive force itself.  See Chaudhry, 751 F.3d at 1096 ("[A] successful claim for
12 excessive force under the Fourth Amendment provides the basis for a successful claim
13 under § 52.1."); Rodriguez v. City of Modesto, No. 1:10-CV-01370-LJO, 2013 WL
14 6415620, at *13 (E.D. Cal. Dec. 9, 2013) ("A plaintiff bringing a Bane Act excessive force
15 [claim] need not allege a showing of coercion independent from the coercion inherent in
16 the use of force.").

17 Assuming the disputed material facts in Plaintiff's favor, a viable Fourth
18 Amendment excessive force claim exists, so Plaintiff's Bane Act claim also survives.
19 Therefore, the Court DENIES summary judgment with regard to Plaintiff's sixth cause of
20 action.

21 **3.  IIED**

22 Plaintiff's seventh cause of action is an IIED claim on behalf of Decedent.
23 Defendants are entitled to judgment because, under California Civil Procedure Code
24 Section 377.34, Plaintiff's claim fails as a matter California law.  The code provides:
25 ///
26 ///
27 ///
28 ///

> In an action or proceeding by a decedent's personal representative or successor in interest on the decedent's cause of action, the damages recoverable are limited to the loss or damage that the decedent sustained or incurred before death, including any penalties or punitive or exemplary damages that decedent would have been entitled to recover had the decedent lived, <u>and do not include damages for pain, suffering, or disfigurement</u>.

Cal. Civ. Proc. Code § 377.34 (emphasis added). Section 377.34 expressly precludes recovery for the types of damages Plaintiff seeks by way of this claim. As such, the Court finds that Plaintiff cannot recover for IIED on behalf of Decedent. See <u>Harmon v. Cty. of Sacramento</u>, No. 2:12-CV-02758 TLN, 2016 WL 319232, at *17 (E.D. Cal. Jan. 27, 2016) ("[S]tate claims for emotional distress are not recoverable upon the death of the person allegedly harmed."). Defendants' motion for summary judgment is thus GRANTED as to Plaintiff's seventh cause of action.

### 4. Battery

Plaintiff's eighth cause of action is for battery. If an officer uses unreasonable or excessive force in the course of an arrest, then the officer can be liable for that tort. <u>Edson v. City of Anaheim</u>, 63 Cal. App. 4th 1269, 1273 (1998). "[A] prima facie battery is not established unless and until plaintiff proves unreasonable force was used." <u>Id.</u> Battery claims under California state law mirror the federal standards for analyzing excessive force. See <u>Yount v. City of Sacramento</u>, 43 Cal. 4th 885, 902 (2008) ("Section 1983 creates a species of tort liability . . . [and is] the federal counterpart of state battery or wrongful death actions.") (Citations omitted); <u>Brown v. Ransweiler</u>, 171 Cal. App. 4th 516, 527 (2009) ("A state law battery claim is a counterpart to a federal claim of excessive use of force. In both, a plaintiff must prove that the peace officer's use of force was unreasonable."). This claim thus rises and falls with Plaintiff's Fourth Amendment excessive force claim. Since disputed material facts preclude adjudication of the reasonableness of Officer Acosta's conduct, the Court DENIES summary judgment with regard to Plaintiff's eighth cause of action.

///

**5.    NIED**

Plaintiff's ninth cause of action is for NIED, on his own behalf under a bystander theory.  An NIED claim under the bystander theory requires a showing that Plaintiff: "(1) is closely related to the injured victim; (2) was present at the injury-producing event and aware that it was causing injury to the victim; and, (3) suffered serious emotional distress beyond that typically anticipated in a disinterested witness." Burgess v. Superior Court, 2 Cal. 4th 1064, 1073 (1992).  Plaintiff's testimony provides that he feels lonely, cannot sleep, and has experienced uncharacteristically high blood pressure since the incident.  Lam Depo., ECF No. 85-1, at 106:14–19.  Because a reasonable jury could find that Plaintiff suffered from emotional distress due to being present at the shooting death of his son, the Court therefore DENIES summary judgment with regard to Plaintiff's ninth cause of action.

## CONCLUSION

For the reasons discussed, the Court GRANTS, in part, and DENIES, in part, Defendants' Motion for Summary Judgment, ECF No. 72, in accordance with the following:

1.    Defendants' Motion for Summary judgment on the first cause of action is DENIED with regard to the claim for wrongful death under the Fourth Amendment, and GRANTED with regard to any Fourteenth Amendment claims set forth within the first cause of action.

2.    Defendants' Motion for Summary judgment on the second cause of action is DENIED with regard to the claims under the Fourteenth Amendment.  Because the Court finds that Officer Acosta did not have time to deliberate his actions, however, the "purpose to harm" standard applies as a matter of law in determining if his actions "shocked the conscience."

3.    Defendants' Motion for Summary judgment on the third cause of action is

GRANTED with regard to the claims for pain and suffering under the Fourth Amendment.

4. Defendants' Motion for Summary judgment on the fourth cause of action is GRANTED with regard to the claims for municipal liability under Monell.

5. Defendants' Motion for Summary judgment on the fifth cause of action, for negligent wrongful death, is DENIED.

6. Defendants' Motion for Summary judgment on the sixth cause of action, for a Bane Act violation, is DENIED.

7. Defendants' Motion for Summary judgment on the seventh cause of action, for IIED on behalf of Decedent, is GRANTED.

8. Defendants' Motion for Summary judgment on the eighth cause of action, for battery, is DENIED.

9. Defendants' Motion for Summary judgment on the ninth cause of action, for NIED, is DENIED.

10. The parties are ordered to file a Joint Notice of Trial Readiness not later than thirty (30) days after the electronic filing of this Memorandum and Order. The parties are to set forth in their Notice of Trial Readiness, the appropriateness of special procedures, whether this case is related to any other case(s) on file in the Eastern District of California, the prospect for settlement, their estimated trial length, any request for a jury, and their availability for trial. The parties' Notice of Trial Readiness Statement shall also estimate how many court days each party will require to present its case, including opening statements and closing arguments. Plaintiff's estimate shall also include the time necessary for jury selection, and Defendant's estimate shall include the time necessary to finalize jury instructions and instruct the jury.

This Court is in session for jury selection, opening statements, presentation of evidence, closing arguments, finalizing proposed jury instructions and verdict forms, and instruction of the jury Monday through Wednesday, only. During trial days, the Court adheres to the following schedule:

///

1           Trial: 9:00—10:30 A.M.

2           Break: 10:30—10:50 A.M.

3           Trial: 10:50—12:00 P.M.

4           Lunch: 12:00—1:30 P.M.

5           Trial: 1:30—3:00 P.M.

6           Break: 3:00—3:20 P.M.

7           Trial: 3:20—4:30 P.M.

8 Jury deliberations only are Monday through Friday if necessary.  After review of the

9 parties' Joint Notice of Trial Readiness, the Court will issue an order that sets forth dates

10 for a final pretrial conference and trial.

11       IT IS SO ORDERED.

13 DATED:  March 30, 2017

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE